## Lewis E. Bower, Plaintiff and Appellant, v. John Popp et al., Defendants. George Wuhs, Appellee.

### Gen. No. 30,959.

1. CHATTEL MORTGAGES—*failure to take possession of mortgaged property or to file statutory affidavit of extension, after maturity of mortgage, as affecting priority over labor lien claimant.* Where no affidavit of extension, as provided by Cahill's St. ch. 95, ¶ 4, was filed within 90 days after the maturity of a chattel mortgage upon an automobile, and the mortgagor neither took possession of the automobile nor made diligent attempts to do so after the maturity of the mortgage debt, such mortgage created no lien as against one having a lien upon such automobile under Cahill's St. ch. 82, ¶ 45, by reason of labor thereon and storage thereof, the automobile having been delivered to such claimant for the purpose of making repairs after the maturity of the mortgage but before the expiration of the 90-day period aforesaid, and having been retained in his possession until taken therefrom by replevin proceedings instituted after the expiration of such 90-day period.

2. REPLEVIN—*propriety of judgment conditioning right of holder of chattel mortgage on property to retain same upon payment of amount of valid superior lien for labor and storage.* Where at the time the holder of a chattel mortgage upon an automobile brought an action of replevin to secure possession of the automobile from one who held it under a valid lien for labor and storage pursuant to Cahill's St. ch. 82, ¶ 45, such mortgage has ceased to be a valid lien upon the property because of noncompliance with Cahill's St. ch. 95, ¶ 4, judgment was properly entered conditioning the right of the plaintiff to retain possession of the automobile upon payment of the amount of the defendant's lien within three days, in view of Cahill's St. ch. 119, ¶ 22.

Bower v. Popp et al., 241 Ill. App. 568.

Appeal by plaintiff from the Superior Court of Cook county; the HON. JOSEPH B. DAVID, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1926. Affirmed. Opinion filed October 5, 1926.

BROWN, BROWN & BROWN, for appellant.

UNDERWOOD, STEVENS & TIMM, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On August 13, 1924, plaintiff commenced an action in replevin for possession of a certain automobile. The sheriff found it in the possession of the defendant, George Wuhs, and took it under the writ, and on the same day delivered it to plaintiff. Wuhs was the only defendant who appeared. There was a trial before the court without a jury, on the issues formed, resulting in the court finding that, although the right to the ownership of the automobile is in plaintiff, Wuhs had a valid lien on it for $379.90. On November 25, 1925, the court entered an alternative judgment on the finding to the effect that plaintiff either pay Wuhs the amount of his claim, $379.90, with proper costs and charges, or within three days return to him the automobile. From this judgment plaintiff appeals.

To plaintiff's declaration, consisting of two counts charging the unlawful taking and retention of the automobile, Wuhs filed pleas, among them a special plea, alleging in substance that at and before the time of the beginning of the action he was engaged in the business in Chicago of towing and repairing automobiles; that on April 15, 1924, John Popp, owner of the automobile, employed him to tow it to his place of business and make certain repairs on it; that he did these things, expending for labor and materials for the same $286.90, and completing the repairs on May 10, 1924; that between that date and the day the auto-

mobile was replevied, his charges for storage on it amounted to $93, and that under the statute he has a lien on it for his total unpaid claim, $379.90, which is superior to plaintiff's claim of lien on or right of property in the automobile. Evidently the statute referred to in the plea is the Act of 1921 in reference to liens for labor on or storage of chattels. Cahill's St. 1925, ch. 82, ¶ 45.

To this special plea plaintiff filed a replication, alleging in substance that he was the owner and holder of a chattel mortgage upon the automobile, which mortgage was duly signed and acknowledged by Popp on March 17, 1922, and duly recorded in the recorder's office of Cook county on March 21, 1922; that the mortgage did not mature until two years after its date (March 17, 1924); that some of Popp's notes, for which the mortgage was given as security, were unpaid; that after the automobile was replevied and after notice of foreclosure sale given to Popp, plaintiff sold the automobile, as he had a right to do under the terms of the mortgage; and that plaintiff's mortgage lien on the automobile was superior to Wuhs' claimed lien.

On the trial plaintiff's attorney admitted that Wuhs had a lien on the automobile under said statute and for the amount claimed, but contended that the mortgage, at the time of the replevy of the automobile, was a valid and subsisting one as against third parties and the superior lien. Wuhs' attorney claimed in substance that as against Wuhs the mortgage was not good, because plaintiff, upon failure of the mortgagor (Popp) to make the stipulated payments, had not, upon the expiration of the mortgage and within apt time thereafter, taken possession of the automobile, but had allowed it to remain in Popp's possession. Wuhs' attorney admitted, however, that if the mortgage on the automobile was a valid and subsisting one as against third persons at the date the auto-

mobile was replevied (August 13, 1924), Wuhs' lien for repairs, etc., was inferior to that of the mortgage. See *Ehrlich v. Chapple*, 311 Ill. 467.

Plaintiff introduced the mortgage in evidence. It is dated, signed, acknowledged and recorded as alleged in plaintiff's replication. By it Popp, in consideration of $972.71 received by him, conveys the automobile to plaintiff as security for said sum, as evidenced by his 19 promissory notes,—the first being for $91.71, due on April 21, 1922, the last being for $1, due "2 years after date" (March 17, 1924), and the remaining notes being each for $50, payable monthly,—the first on May 21, 1922, and the others on the 21st day of succeeding months. It is further provided in the mortgage that the mortgagor may retain possession of the automobile until default in payment of any of the notes; that if he should attempt to secrete, convert, sell or incumber it, or if the mortgagee should at any time deem himself insecure, etc., all unpaid sums might, at the mortgagee's option, immediately become due and payable, etc., and the latter would have the right to pursue and take possession of the automobile, and sell it at public or private sale, etc.; that the mortgagor has "no authority to place any repairs on said automobile without the mortgagee's consent in writing, and that no lien for labor, repairs, equipment or storage, superior to the lien of this mortgage, shall attach to the automobile until all indebtedness secured hereby is paid"; and that the "mortgagor consents that replevin of the automobile may be instituted by the mortgagee without notice or demand."

And plaintiff called as a witness Frank E. Shapera, who testified in substance that defendant paid the first six notes, but had not paid any of those maturing after September 21, 1922; that something over $600 remained unpaid when the automobile was replevied; that subsequent to the replevy plaintiff

bought it in at the foreclosure sale held September 10, 1924, for less than the amount of Popp's remaining indebtedness; that one of the reasons why Popp did not make further payments after September 21, 1922, was that he became ill and was taken to a hospital, where he remained for over six months; that while there his wife called on the witness and explained the situation, and he, as plaintiff's agent, verbally agreed with her to extend payment for ninety days on each of the remaining notes except the last one; that after Popp got out of the hospital, but still was unable to work, the witness called on him frequently and several times requested that he turn over the automobile to plaintiff, or at least inform the witness where the automobile was, but that Popp refused to tell him, saying, in substance, on one occasion, that he expected soon to be able to take care of his mortgage indebtedness; that he had considerable money in the automobile, and that if he told the witness where the automobile was plaintiff would foreclose on it and he would have nothing to show for his previous payments and that the witness first learned that the automobile was in Wuhs' shop the day before it was replevied. Wuhs did not introduce any evidence, apparently because of the admissions of plaintiff's attorney above mentioned; nor was Popp called as a witness.

We are of the opinion that, if at the time the automobile was replevied the mortgage was no longer a valid and subsisting one as to third parties, the trial court was justified in entering the alternative judgment appealed from. In section 22 of the Replevin Act (Cahill's St. 1925, ch. 119, ¶ 22) it is provided that "if the property was held for the payment of any money, the judgment may be in the alternative that the plaintiff pay the amount for which the same was rightfully held, with proper damages, within a given time, or make return of the property." In con-

struing this provision it is said in *Lamping Bros. v. Payne,* 83 Ill. 463, 466, that it applies to cases where the general property is in the plaintiff, and the defendant shows a special property, consisting of a right to hold the property, as against the plaintiff, only for a certain sum of money, "as, where the defendant showed special property by a levy of a *fi. fa.* against the plaintiff, or where the defendant holds the property as the property of the plaintiff, *but by virtue of some lien,* as carrier, warehouseman *or otherwise.*" And in *Janes v. Gilbert,* 168 Ill. 627, 630, in further construing the provision, it is said: "The statute does not say that the money must be money owed *by the plaintiff,* but only that it must be money for the payment of which the property was rightfully held."

In view of the admission of plaintiff's attorney, that when the automobile was replevied Wuhs had a lien thereon to the amount of $379.90, the main question to be decided is whether the lien of plaintiff's alleged mortgage was superior to, and entitled to preference over, Wuhs' lien. And that question involves another question, viz: Whether, at the date of the replevy and under the facts disclosed, the mortgage could be held to be a valid and subsisting one as against the lien and rights of Wuhs, a third party.

In section 4 of the Chattel Mortgage Act (Cahill's St. 1925, ch. 95, ¶ 4) it is provided that a chattel mortgage, if acknowledged and recorded as mentioned in preceding sections of said act, "shall thereupon if *bona fide,* be *good and valid* from the time it is filed for record until ninety days after the maturity of the entire debt or obligation or until ninety days after an extension of time of payment thereof made as hereinafter provided: *Provided,* that such maturity shall not exceed three years from the filing of such instrument for record *unless* within ninety days after the expiration of said three years, or if the debt or obli-

gation matures within such three years'' (as did the alleged mortgage in question) *"then within ninety days after the maturity of said debt or obligation,* the mortgagor and mortgagee, his, her, its or their agent or agents, attorney or attorneys *shall file* for record in the office of the recorder of deeds of the county where the original mortgage is recorded, *an affidavit* setting forth particularly the interest which the mortgagee has by virtue of such mortgage in the property therein mentioned, and if such mortgage is for the payment of money, the amount remaining unpaid thereon, and the time when the same will become due by extension or otherwise; which affidavit *shall be recorded* by such recorder, and thereupon the mortgage lien originally acquired shall be continued and extended until ninety days after the expiration of such period of extension of the time of payment: *Provided,* such extension of the time of payment shall not exceed one year from the filing of such affidavit.''

The entire indebtedness secured by the mortgage matured on March 17, 1924. Ninety days thereafter would be June 15, 1924, which was the limit of time that the mortgage would be ''good and valid'' unless extended, as against the rights of third persons. It does not appear that within the ninety days after March 17, 1924, any such affidavit of extension as mentioned in the statute was filed with the recorder. Wuhs was given possession of the automobile by Popp, for the purpose of making repairs on it, after the maturity of the last unpaid note but before June 15, 1924, the expiration of said ninety-day period. He furnished materials and performed labor on the automobile, and he had it in his possession until plaintiff replevied it on August 13, 1924, which was nearly two months *after* the expiration of the mortgage by its terms and the provision of the statute. Under the facts disclosed and the law applicable thereto, we think that at the time plaintiff replevied the automo-

bile his mortgage, he not having in apt time before taken possession of the automobile, was no longer "good and valid" as against the lien and rights of Wuhs. In *Lyons v. People's Bank*, 317 Ill. 44, 46, it is said: "Our statute relating to chattel mortgages is in derogation of the common law, and it must be strictly construed." In *Thompson v. Yeck*, 21 Ill. 73, 74, it is said: "Possession of personal property being one of the strongest indications of ownership, the policy of that law is, that so soon as the credit expires, the mortgagee shall take possession, so that others may not be deceived and defrauded by the appearance of ownership in one, while the title is really in another." In *Shannon v. Wolf*, 173 Ill. 253, 258, it is said (italics ours): "The law of Illinois has always been that, if the mortgagee in a chattel mortgage neglects to reduce the property to possession upon the default of the mortgagor, *or within a reasonable time thereafter to be determined by the circumstances of the parties,* he loses his lien as against the rights of third persons, and that, as affecting the interests and liens of the latter, the mortgage becomes a void instrument. (*Burnham v. Muller,* 61 Ill. 453.) In *Reed v. Eames,* 19 Ill. 594, where the parties lived in the same town or county, it was held that if the mortgagee permitted the property to remain in the possession of the mortgagor one day after default, the delay would be unreasonable, and would constitute a fraud *per se* which *could not be explained."* See also *Cass v. Perkins,* 23 Ill. 382, 384; *Jones v. Noel,* 139 Ill. 377, 380; *Albert Pick & Co. v. Spoor,* 212 Ill. App. 612, 614; *Williams v. Head,* 219 Ill. App. 5, 9. In the testimony of plaintiff's witness, Shapera, there was an attempt made to explain why plaintiff had not taken possession of the automobile before August 13, 1924, but under the decisions above mentioned such explanations are not allowed as against the intervening liens and rights of third

persons. Furthermore, it does not appear from Shapera's testimony that, at any time after Popp's default in the payment of his monthly notes maturing after September 21, 1922, and before June 15, 1924, plaintiff made diligent search to ascertain the whereabouts of the automobile. Apparently, upon Popp's several refusals to give information of the whereabouts of the automobile, no further attempts were made by plaintiff to ascertain its location. And Shapera's testimony does not disclose that about the time the mortgage expired on June 15, 1924, or within a reasonable time thereafter, plaintiff made any attempts to find the automobile and obtain possession of it, until about August 13, 1924, when it was replevied from the possession of Wuhs.

Our conclusion is that the alternative judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*

FITCH and BARNES, JJ., concur.